No. 81,117

BARBARA BISHOP, *Appellant,* v. CITY OF WINONA, *Appellee.*
(983 P.2d 861)

Opinion filed July 9, 1999.

*Stephen P. Weir,* of Hein and Weir, Chartered, of Topeka, argued the cause and was on the brief for appellant.

*Thomas R. Powell,* of Hinkle, Eberhart & Elkouri, LLC, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This appeal is from a district court judgment affirming a Board of Tax Appeals (BOTA) order sustaining an ad valorem tax increase. The City of Winona (City) issued general obligation bonds for the construction of a natural gas system. A mill levy was imposed on property owners in the City. Barbara Bishop, a taxpayer, filed a tax protest with BOTA under K.S.A. 79-2005 challenging her 1995 real estate taxes. BOTA upheld the tax increase. Bishop appealed to the district court.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

We find no error and affirm the district court and BOTA.

## FACTS

In 1990, the City decided to install a municipal natural gas system. The City adopted an ordinance authorizing the gas system to be financed by the issuance of general obligation bonds. The system's estimated cost was $550,000. The City received a block grant of $250,000. The issuance of $300,000 in general obligation bonds to pay the remainder was approved at a special city election.

In March 1992 it became apparent that the cost of the project would exceed the $550,000 estimate by $50,000. The City decided to issue a revenue bond to finance the difference. The City, as required by law, published a notice of intent to issue the $50,000 utility revenue bond. No objections were lodged and the revenue bond was issued.

Presumably, the project was commenced as planned, and the bonds were being paid. However, the residents of Winona were slow to convert from propane to the new natural gas system. The City raised property taxes by increasing the mill levy from 40.448 in 1994 to 86.014 in 1995, in part, to pay interest due on the $300,000 general obligation bond. The City did not increase gas rates or user fees.

## DISCUSSION

Bishop contends the City's bonds were payable only from revenue derived from users of the gas system and not from the imposition of a mill levy on property owners.

Section 17 of the $50,000 revenue bond resolution provides that the principal and interest shall be paid out of the revenues derived from user fees of the new gas system. Section 17 says:

"Covenant to Fix and Collect Rates. The City hereby covenants that it will cause to be fixed, established, maintained and collected, such rates, fees or charges for services furnished by or through the System, which shall generate Revenues sufficient to pay the expenses of operating and maintaining the System, to pay the principal of and interest on *all Bonds,* as well as on any and all other revenue or general obligation bonds of the City which might be hereafter issued and which shall be payable from the Revenues . . . ." (Emphasis added.)

Bishop alleges that the language "all Bonds" includes both the $50,000 revenue bond and the $300,000 general obligation bond.

The result, Bishop argues, is that the City covenanted to pay for the entire natural gas installation with user fees and not a city mill levy (general property tax). Bishop also alleges misrepresentations were made by City officials about how the $300,000 general obligation bond would be paid. According to Bishop, the City told its residents that all the bonds issued for the gas installation would be paid through user fees and not through general taxes. Bishop claims she and others were lied to by the City.

The City does not dispute that the $50,000 revenue bond must be paid through user fee revenues. However, Bishop alleges that the mill levy funds have been used to pay the revenue bond. She also complains that the City should have increased the gas rates and user fees before raising property taxes to pay the general obligation bonds.

### BOTA's Order

Bishop, who does not use the natural gas system, appealed the ad valorem tax increase to BOTA. BOTA conducted hearings on her allegations and concluded that she failed to show: (1) the increased mill levy was illegal, (2) the general obligation bonds were illegally issued, and (3) the mill levy was used to pay the revenue bonds. As to the claims that she was lied to about how the general obligation bonds would be paid, BOTA concluded:

"15. . . . *[T]he Board finds that any misrepresentations made to the Taxpayers may be handled through civil process, not tax protests.* The evidence here does not indicate that the mill levy in question is illegal." (Emphasis added.)

BOTA also found:

"13. In summary, the City of Winona issued $300,000 in *general obligation* bonds, and $50,000 in *revenue* bonds.

"14. The general obligation bonds are to be paid from the city mill levy. K.S.A. 10-102. In contrast, the revenue bonds are paid out of the revenue stream of the improvements financed. K.S.A. 10-1201. See Black's Law Dictionary 162, 163, 1185 (5th ed. 1979). Therefore, in this case, a smaller amount of the debt will be paid from the revenues while the lion's share is being paid out of the general mill levy, necessitating a higher mill levy."

## The District Court's Review

Bishop filed a petition for judicial review in the district court. She "reserved the right in her petition to move to amend to add additional claims against the City of Winona after the City had responded to her K.S.A. 12-105(b) [12-105b] Notice and demand letter." The City answered the K.S.A. 12-105b letter through a special entry of appearance. Bishop sought to amend her appeal of BOTA's decision to include affirmative claims against the City for: (1) a writ of mandamus; (2) a declaratory judgment; (3) injunctive relief; (4) breach of contract; (5) third-party beneficiary breach of contract; (6) K.S.A. 60-907 illegal charge; (7) taking without just compensation; and (8) misrepresentation. By an agreed journal entry, she was allowed to amend her petition, and the City intervened as an interested party.

The action proceeded as a K.S.A. Chapter 60 lawsuit. Both parties moved for summary judgment. The district court framed the issues as whether: (1) the City was required to pay both the general obligation bond and the revenue bond from revenues of the gas system; (2) the taxpayer was entitled to relief in the form of tax abatement for increased taxes to pay the bonds; and (3) the taxpayer was entitled to relief on her other eight claims. The district court granted summary judgment for the City.

The district court held: (1) The City validly issued the bonds; (2) the notice of special bond election and ballot form were not intended to mislead and should not have misled or deceived the electors into believing that the $300,000 general obligation bonds would be paid from gas revenues only, (3) the wording in the $50,000 revenue bond saying "all Bonds" shall be paid from revenues, does not mean the $300,000 general obligation bond shall be paid from revenues, (4) BOTA's order denying Bishop's protest is affirmed, and (5) Bishop's prayer for tax abatement for her increase in taxes is denied.

Bishop has not appealed the denial of the tort, contract, and equitable claims she advanced in the district court.

## JURISDICTION

The City raises jurisdiction as its first issue. Despite BOTA's explicit statement that Bishop could not address her claims of misrepresentation through tax protests, she proceeded in the district court to add numerous civil claims against the City *in the BOTA tax appeal.*

The district court's jurisdiction over the matter was confined to a review of BOTA's decision under the factors set forth in K.S.A. 77-621(c). See *In re Tax Appeal of Univ. of Kan. School of Medicine,* 266 Kan. 737, 748, 973 P.2d 176 (1999). A petition for review of a BOTA ad valorem tax protest decision must commence in the district court of the county in which the property is located. K.S.A. 74-2426(c)(4). Bishop commenced her action as a petition for judicial review, but also proceeded under chapter 60 as a civil action. Bishop now makes the same argument that she made to BOTA, that all bonds must be paid from revenues. She asks us to review BOTA's decision, having abandoned her other eight claims.

K.S.A. 74-2426(c)(4) is not a permissive statute. The district court *shall* conduct the first review of BOTA's decision. Review is under K.S.A. 77-621(c) and is limited to determining whether:

"(1) The agency action, of the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

Here the district court made findings of fact and conclusions of law granting *summary judgment* in favor of the City. The district court indirectly effected a K.S.A. 77-621(c) examination of BOTA's

order which denied abatement for all ad valorem tax increases claimed by Bishop. Although K.S.A. 77-621(c) was not referenced by the district court, none of the statute's criteria for reversing an agency action were found to apply here. We have jurisdiction to review BOTA's decision.

In reviewing a decision of BOTA, this court makes the same review as a district court. Review is confined to an examination of the eight factors set out in K.S.A. 77-621(c). *In re Tax Appeal of Univ. of Kan. School of Medicine,* 266 Kan. at 748.

The district court's decision is well reasoned as to the validity of the bonds. The alleged misrepresentations made by the City are not before us. The taxpayer's argument is without merit.

General obligation bonds by definition are " 'payable from and secured by a pledge of the issuer's *taxing* power.' " *City of Chanute v. Polson,* 17 Kan. App. 2d 159, 161, 836 P.2d 6 (1992) (citing *2416 Corp. v. Board of Trustees,* 209 Ill. App. 3d 504, 508, 568 N.E.2d 276 [1991]). (Emphasis added.) Revenue bonds are payable from the income of the projects that are built using the bond proceeds. 17 Kan. App. 2d at 161. Bishop's contention that the City agreed in a later *revenue bond* to pay an earlier *general obligation bond* from revenues fails. We find that no meritorious arguments based on the K.S.A. 77-621(c) factors exist.

Affirmed.

McFARLAND,C.J., not participating.

JAMES W. PADDOCK, Senior Judge, assigned▮